OPINION OF THE COURT
Dianne T. Renwick, J.
This action arises from a dispute between two attorneys who represented the same client at different intervals. Plaintiff Michael Drezin, Esq. seeks payments from defendant Trina E. Delisser, Esq. of the legal fees which he had earned while representing their mutual client. Defendant Delisser now moves for a dismissal of the action, pursuant to CPLR 3211 (a) (7), on the ground that plaintiff Drezin has failed to state a cause of action. Plaintiff Drezin moves for partial summary judgment on liability. The motions are sua sponte consolidated for joint disposition. The dispositive issue raised by these motions is whether the failure to follow the procedural requirements for changing attorneys, pursuant to CPLR 321 (b), provides the substituted attorney with a cause of action for attorney’s fees against the attorney who substituted him.
Factual Background
Plaintiff and defendant are attorneys who previously represented Francine Gordon (hereinafter referred to as F. Gordon) at different intervals in her efforts to sell marital property to which she acquired sole ownership during divorce proceedings. Pursuant to a July 2003 Oklahoma judgment of divorce, F. Gordon was awarded the marital property located in Mount Vernon, New York. F. Gordon’s ex-husband, however, refused to sign papers conveying his interest in the property to F. Gordon as required by the judgment of divorce.
Meanwhile, on November 19, 2003, F. Gordon filed a chapter 13 bankruptcy petition at the United States Bankruptcy Court, Western District of Virginia. A little over two years later the *708 bankruptcy judge issued an order dated January 19, 2006 temporarily suspending F. Gordon’s payments under the chapter 13 plan in order to give her an opportunity to sell the subject property. The court granted the suspension of the payments on the condition that the proceeds from the sale be used to pay the remaining balance owed on the chapter 13 plan, the debtor’s mortgage and certain attorney’s fees previously allowed by the Bankruptcy Court.
Sometime in 2006 F. Gordon retained plaintiff Drezin to obtain “insurable title” for the property so that it could be sold. F. Gordon also separately retained the defendant Delisser as the real estate closing attorney for the eventual sale of the property. Plaintiff Drezin, on behalf of F. Gordon, secured a decision dated May 19, 2006 from the Supreme Court, Westchester County, which ordered that the Oklahoma judgment of divorce be given full faith and credit in New York. In July 2006, plaintiff Drezin, on behalf of F. Gordon, submitted an order to show cause seeking appointment of the sheriff/commissioner of Westchester County as the party authorized to sign a deed transfer on behalf of F. Gordon’s ex-husband. On August 7, 2006, the return date, the order to show cause was granted by the Supreme Court Justice with the instructions to plaintiff F. Gordon to submit a proposed order.
Reportedly, during this time period, plaintiff Drezin and his client F. Gordon had a dispute regarding legal fees. As reported by new counsel, plaintiff Drezin refused to do any further work on behalf of F. Gordon, including submitting the proposed order to the court, until his legal fee was either paid or security for payment of his fee was arranged. Due to the delays, the Bankruptcy Court granted a further extension of time to sell the property enabling F. Gordon to sell it on or before October 4, 2006. The extension of time was also on the condition that the sales proceeds be used to pay the aforementioned debts.
After 21 days had passed since the return date of the order to show cause and plaintiff Drezin still did not submit the proposed order to the Westchester County Supreme Court as instructed, defendant Delisser, at F. Gordon’s request, prepared and submitted the proposed order to the court allowing the sheriff/ commissioner to sign the deed transfer. On September 7, 2006, the Westchester County Supreme Court modified the proposed order submitted by defendant Delisser and signed it, thereby enabling the sheriff/commissioner to sign the deed transfer.
There is no dispute that F. Gordon never procured plaintiff Drezin’s consent to be relieved as counsel. Specifically, neither *709 F. Gordon nor the incoming counsel, defendant Delisser, filed with the clerk of the Westchester County Supreme Court a consent to change attorney, signed by the retiring attorney and acknowledged by the party. Nor did anybody make a motion to the court for permission to discharge plaintiff Drezin as F. Gordon’s counsel and replace him with defendant Delisser with regard to the action in Westchester County Supreme Court. Plaintiff Drezin claims that, pursuant to a retainer agreement, F. Gordon agreed to pay plaintiff his attorney’s fees at the closing of the subject property, subject to priorities of the bankruptcy creditors. After the closing, the sales proceeds were distributed according to the order of the Bankruptcy Court, which required the proceeds to be used to first pay off the creditors and the legal fees for the closing. According to defendant Delisser the order contained a provision for payment of his attorney’s fees; it contained no provision for the payment of plaintiff Drezin’s legal fees. When plaintiff Drezin received no payment from F. Gordon, this action ensued against the closing attorney, defendant Delisser, seeking to recover the attorney’s fees F. Gordon had agreed to pay him at closing.
Discussion
On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, “the court must determine whether, accepting as true the factual averments of the complaint and according the plaintiff the benefits of all favorable inferences which may be drawn therefrom, the plaintiff can succeed upon any reasonable view of the facts stated.” (Fast Track Funding Corp. v Perrone, 19 AD3d 362, 362 [2d Dept 2005].) The complaint is to be liberally construed, and the plaintiff accorded the benefit of every possible favorable inference. (Leon v Martinez, 84 NY2d 83, 87-88 [1994].) The court’s function on such a motion is to determine whether the plaintiffs allegations fit within any cognizable legal theory, that is whether the plaintiff has a cause of action, and not whether he or she has stated one. (Fast Track Funding Corp. v Perrone, 19 AD3d 362 [2005].) On the other hand, while factual allegations contained in a complaint should be accorded “favorable inference,” bare legal conclusions and inherently incredible facts are not entitled to preferential consideration. (Matter of Sud v Sud, 211 AD2d 423, 424 [1st Dept 1995].)
Here, the complaint avers claims purportedly under theories of negligence and intentional tort based upon the same *710 factual allegations. In essence, plaintiff Drezin argues that defendant Delisser’s failure to follow the procedural requirements of CPLR 321 (b) for replacing plaintiff Drezin as F. Gordon’s counsel entitled plaintiff to recover for the consequential damages for such inaction, i.e., the alleged failure to recover at closing of the subject property the attorney’s fees he had earned in the action in Westchester County Supreme Court.
While this court has found no case directly on point, the court finds that, contrary to plaintiffs allegations, CPLR 321 (b) was never intended to create a cause of action by the improperly replaced outgoing lawyer against the incoming lawyer, who failed to comply with the attorney removal statute. Pursuant to CPLR 321 (b), for a change of attorney to take effect during an action, the parties must comply with the mode of discharge prescribed by the statute. Specifically, CPLR 321 (b) provides that once a lawyer appears in an action, there are two ways he/ she can get out or be removed from the case. First, when the change of attorney can be effected by agreement, the incoming attorney and the outgoing attorney can simply file a jointly-signed consent (with acknowledgment of the client) with the clerk and serve notice of the change of attorney on the other parties. (CPLR 321 [b] [1].) If consent is lacking, judicial intervention is required for substitution of counsel. A motion must be made upon such notice as the court may direct, i.e., by order to show cause. (CPLR 321 [b] [2].) The notice of such a motion must be given to all the parties and counsel involved in the case. (CPLR 321 [b] [2].) Until the attorney is removed by a court order or by stipulation, his/her status as attorney of record continues unabated. (Moustakas v Bouloukos, 112 AD2d 981 [2d Dept 1985].)
Such statutory scheme for attorney removal has generally been applied to afford protection to adverse parties by eliminating dispute and uncertainty as to whether and when the authority of an attorney representing an opponent terminated. (MacArthur v Hall, McNicol, Hamilton & Clark, 217 AD2d 429 [1st Dept 1995]; Moustakas v Bouloukos, 112 AD2d 981 [1985]; see also Blondell v Malone, 91 AD2d 1201 [4th Dept 1983].) For instance, in Cippitelli v County of Schenectady (284 AD2d 823 [3d Dept 2001]), defendant moved to dismiss the complaint for plaintiffs failure to comply with discovery demands. (Id.) The motion was considered unopposed when the affidavit in opposition was submitted by an attorney purporting to represent plaintiff for whom plaintiff had not submitted a change of at *711 torney form. (See also Eveready Ins. Co. v DeLeon, 287 AD2d 536 [2d Dept 2001].)
The attorney removal statute has also been construed by some courts to “further [the] salutary purpose of protecting parties from attorneys who represent other parties in the action.” (Moustakas v Bouloukos, 112 AD2d 981, 984 [1985].) For instance in Moustakas v Bouloukos (supra), a client discharged his counsel and, without filing a stipulation of withdrawal or obtaining a court order, proceeded into the action pro se for the purpose of entering into a settlement with the adverse party. The Court held that a client who entered into a settlement should be allowed to rescind the settlement agreement on the ground that the formalities of CPLR 321 (b) had not been followed; in the absence of such compliance, the Court reasoned, the client is still considered represented by counsel of record, thereby prohibiting the opponent’s attorney from communicating directly with the client. (Moustakas v Bouloukos; but see Imor v Imor, 119 AD2d 913 [3d Dept 1986].)
Moreover, it also has been held that a lawyer who has been discharged in contravention of CPLR 321 (b) lacks standing to seek to set aside a stipulation of discontinuance of an action in an effort to protect her rights to disputed attorney’s fees. For instance, in Pemberton v Dolphin Dev. Corp., the Court rejected the firm’s assertion that failure to follow the procedural requirements attendant to its substitution rendered mill and void the subsequent activity by the parties in the action (134 AD2d 23 [3d Dept 1987]). Since CPLR 321 (b) has been construed as not serving the purpose of protecting the attorney of record (see Pemberton v Dolphin Dev. Corp, supra), it logically follows that the statute was never meant to create a cause of action by the outgoing lawyer, who was improperly replaced, against the incoming lawyer, who failed to comply with the statute. Instead, as noted above, CPLR 321 (b) has been construed as protecting only adverse parties and the parties from attorneys who represent other parties in the action.
CPLR 321 (b), therefore, offers plaintiff Drezin no viable cause of action against defendant Delisser for the incoming attorney’s replacement of the outgoing attorney without complying with the attorney removal statute. This, however, does not necessarily mean that plaintiff Drezin has no cause of action against defendant Delisser for the alleged factual allegations that defendant Delisser’s oversight prevented plaintiff Drezin from receiving payment for his legal fees out of the proceeds of the sale of the subject property at the closing.
*712 It is well established law that a pleading, although inartfully drawn, should not be dismissed so long as it sets forth a cause of action. (McLaughlin v Thaima Realty Corp., 161 AD2d 383 [1st Dept 1990].) The form of the complaint and the label attached by the pleader are not controlling, and it is enough that the pleader state the facts making out a cause of action. (Man Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d 239 [1967]; Kraft v Sheridan, 134 AD2d 217 [1st Dept 1987].) Thus, it is not necessary that the cause of action have a particular name, like here (labeled a CPLR 321 [b] violation), since the law will find a remedy if there has been a wrong, and even if the cause of action is labeled incorrectly, it will not be dismissed if the facts alleged constitute a cognizable cause of action. (Klein v Martin, 221 AD2d 261 [1st Dept 1995].) The test is simply whether the pleading gives notice of the transactions relied on and the material elements of the cause of action. (Id.)
Obviously, defendant Delisser, as the incoming attorney, owed no contractual duty to plaintiff, as the outgoing attorney, to make sure that the latter was paid out of the proceeds of the sale. Defendant Delisser only had contractual obligations to her client, F. Gordon, and owed no contractual obligations to the outgoing attorney, plaintiff Drezin, a nonparty to the retainer agreement, who lacks standing to sue thereunder. (See Crown Wisteria v F.G.F. Enters. Corp., 168 AD2d 238 [1st Dept 1990]; LaSalle Natl. Bank v Ernst & Young, 285 AD2d 101 [1st Dept 2001].) Nor can defendant Delisser’s alleged inaction give rise to tort liability absent a special relationship giving rise to a duty to act. (See Restatement [Second] of Torts § 314.)
Absent any privity or special relationship with defendant Delisser, plaintiff Drezin’s only possible source of relief, as the outgoing counsel, against defendant Delisser, as the incoming counsel, is Judiciary Law § 475. Such statute broadly provides that “[f]rom the commencement of the action, . . . the attorney who appears for a party has a lien upon [the] client’s cause of action, claim or counterclaim . . . and the proceeds thereof.” Further, Judiciary Law § 475 explicitly provides that the attorney’s charging lien attaches to proceeds of a verdict, report, determination, decision, judgment or final order in the client’s favor, “in whatever hands they may come.” (Id.) Thus, if an attorney has a charging lien upon the proceeds produced by a particular litigation for services in connection with it, she may trace the proceeds into the hands of a third person or hold a defendant responsible, as incoming counsel, if the defendant know *713 ingly pays the client and frustrates collection of the outgoing attorney’s fees. (Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc., 64 AD2d 484 [4th Dept 1978], affd 48 NY2d 890 [1979].)
Here, however, plaintiff Drezin’s legal services rendered on behalf of F. Gordon were not the subject of a charging lien. Under Judiciary Law § 475, an attorney has a lien for his legal efforts that produce proceeds on behalf of his client and it is upon such funds that the attorney’s charging lien attaches. (Theroux v Theroux, 145 AD2d 625 [2d Dept 1988]; Kaplan v Reuss, 113 AD2d 184 [2d Dept 1985].) For example, an attorney has a charging lien on personal property or real property recovered by the attorney for her client. (See e.g. Matter of Hasbrouck, 153 App Div 394 [2d Dept 1912]; West v Bacon, 13 App Div 371 [1st Dept 1897].) Conversely, an attorney has no lien on property in merely successfully defending or protecting the title thereto. (Morey v Schuster, 159 App Div 602 [4th Dept 1913].)
In this case, F. Gordon retained plaintiff simply to seek full faith and credit from New York State Supreme Court (Westchester County) of the Oklahoma judgment that gave F. Gordon sole ownership of the marital property located in Westchester County. Under the circumstances, it cannot be said that plaintiff Drezin’s legal efforts produced proceeds on behalf of his client so as to create a lien on the real property. Rather, plaintiff Drezin’s actions simply made the subject property marketable and merely permitted its eventual sale. (Cf. Matter of Desmond v Socha, 38 AD2d 22 [3d Dept 1971], affd without op 31 NY2d 687 [1972] [holding that even though an attorney had enhanced the value of a realty by obtaining removal of an onerous zoning restriction, that enhancement was not the subject of a charging lien since there was nothing recovered or created by the attorney’s effort to which the lien could attach].) Since plaintiff Drezin had no charging lien upon the proceeds of the sale of the subject property, plaintiff Drezin may not trace the proceeds into the hands of defendant Delisser as closing attorney for F. Gordon. Accordingly, plaintiff Drezin cannot hold defendant Delisser responsible, as incoming counsel, even if defendant Delisser’s action or inaction frustrated the collection of plaintiff Drezin’s attorney’s fees. (Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc., 48 NY2d 890 [1979].)
Conclusion
This court understands plaintiff Drezin’s predicament, assuming that his allegations are true, that any chances of getting *714 paid for the legal services he rendered on behalf of now insolvent E Gordon have been dissipated by his replacement as F. Gordon’s counsel in contravention of CPLR 321 (b). This court’s role, however, is to decide the dispute before it, according to the applicable law. Accordingly, this court finds that plaintiff Drezin has no CPLR 321 (b) cause of action against defendant Delisser as the lawyer who replaced him as F. Gordon’s counsel. Instead, plaintiff Drezin must proceed to collect his fees from his former client, F. Gordon, who is still legally, morally and ethically obligated to meet her responsibilities of paying plaintiff Drezin’s legal fees.
For the foregoing reasons, it is hereby ordered that the motion by defendant Trina E. Delisser, pursuant to CPLR 3211 (a) (7), based upon plaintiff Drezin’s failure to state a cause of action is granted; it is further ordered that the clerk shall enter a judgment in favor of defendant Trina E. Delisser dismissing the action forthwith; and it is further ordered that plaintiff Drezin’s motion, seeking summary judgment, is denied as moot.